## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.

CONAGRA FOODS, INC.,
HORIZON MILLING, LLC,
CARGILL INCORPORATED,
and
CHS INC.,

     *Defendants.*

Case No. 1:14-cv-00823-KBJ

Judge Ketanji Brown Jackson

## FINAL JUDGMENT

WHEREAS, Plaintiff United States of America ("United States") filed its Complaint on May 20, 2014, the United States and Defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18), and Section 1 of the Sherman Act, 15 U.S.C. § 1.

## II. DEFINITIONS

As used in this Final Judgment:

A.     "Acquirer" means Miller Milling, or another entity or entities to which Defendants divest the Los Angeles Mill, the New Prague Mill, the Oakland Mill, and the Saginaw Mill.

B.     "Ardent Mills" means the joint venture that will be formed by the Transaction.

C.     "Cargill" means Defendant Cargill Incorporated, a privately held company that is incorporated in Delaware and headquartered in Wayzata, Minnesota, its successors and assigns,

and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, including Ardent Mills, and their directors, officers, managers, agents, and employees.

   D. "CHS" means Defendant CHS Inc., a Minnesota corporation headquartered in Inver Grove Heights, Minnesota, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, including Ardent Mills, and their directors, officers, managers, agents, and employees.

   E. "ConAgra" means Defendant ConAgra Foods, Inc., a Delaware corporation headquartered in Omaha, Nebraska, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, including Ardent Mills, and their directors, officers, managers, agents, and employees.

   F. "Horizon" means Defendant Horizon Milling, LLC, a joint venture between Cargill and CHS headquartered in Wayzata, Minnesota, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, including Ardent Mills, and their directors, officers, managers, agents, and employees.

   G. "Divestiture Assets" means the assets listed in Schedule A.

   H. "Los Angeles Mill" means Item 2 on Schedule A and the assets associated with Item 2 that are listed in Item 3 on Schedule A.

   I. "New Prague Mill" means Item 1(a) on Schedule A and the assets associated with Item 1(a) that are listed in Item 3 on Schedule A.

   J. "Oakland Mill" means Item 1(b) on Schedule A and the assets associated with Item 1(b) that are listed in Item 3 on Schedule A.

3

K.      "Saginaw Mill" means Item 1(c) on Schedule A and the assets associated with Item 1(c) that are listed in Item 3 on Schedule A.

L.      "Miller Milling" means Miller Milling Company, LLC, a Minnesota limited liability company headquartered in Minneapolis, Minnesota, its parent, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

M.      "Transaction" means the proposed formation of the Ardent Mills Joint Venture pursuant to the March 4, 2013 Master Agreement by and among ConAgra, Cargill, CHS, and HM Luxembourg S.A.R.L., as amended.

N.      "Wheat Customer Confidential Information" means any customer-specific information not in the public domain that reflects:

1.   wheat sales by Defendants to customers or potential customers other than Ardent Mills, including, but not limited to, the type of wheat purchased, origination or delivery point of purchased wheat, date of purchase, purchase price or quantities, or mode or cost of delivery; or

2.   wheat use by such customers or potential customers (other than Defendants in connection with their wheat use to manufacture products for themselves or others), including, but not limited to, the types of products produced using wheat as an input, and the price charged, quantity produced, or capacity or cost to produce such products.

4

### III. APPLICABILITY

A.      This Final Judgment applies to Defendants and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer(s) of the assets divested pursuant to this Final Judgment.

### IV. DIVESTITURES

A.      Defendants are ordered and directed, within ten (10) calendar days after the Court signs the Hold Separate Stipulation and Order in this matter, to divest the Los Angeles Mill, New Prague Mill, Oakland Mill, and Saginaw Mill to Miller Milling in a manner consistent with this Final Judgment. Defendants shall use their best efforts to accomplish the divestitures ordered by this Final Judgment as expeditiously as possible. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed thirty (30) calendar days in total, and shall notify the Court of any such extension. In the event that, through no action of Defendants, the sale of any of the Divestiture Assets cannot be consummated, the United States, in its sole discretion, may agree to the sale of the unsold Divestiture Assets to an alternative Acquirer(s) approved by the United States.

B.      Defendants shall offer to furnish to Acquirer(s), subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets

customarily provided in a due diligence process, except such information or documents subject to the attorney-client privilege or work-product doctrine.  Defendants shall make available such information to the United States at the same time that such information is made available to the Acquirer(s).

C.    Defendants shall permit the Acquirer(s) to have reasonable access to personnel and to make inspections of the physical facilities associated with the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process, except such information or documents subject to the attorney client privilege or the work-product doctrine.

D.    Defendants shall warrant to the Acquirer(s) that each asset will be operational on the date of sale.

E.    Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

F.    Defendants shall warrant to the Acquirer(s) that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

G.    At the option of the Acquirer(s) of the Divestiture Assets, Defendants shall enter into one or more transition services agreements.  These agreements may include, but not be limited to, services relating to the packaging of flour, the purchase of wheat or other ingredients,

6

the inbound transportation of wheat or other ingredients, the outbound transportation of flour or millfeed, or the milling of flour.

1.   The terms and conditions of any contractual arrangement meant to satisfy this provision must be reasonably related to market conditions. The duration of any transition services agreement shall not be longer than six (6) months from the date of divestiture. The United States, in its sole discretion, may approve an extension of the term of any transition services agreement for a period of up to six (6) months. If the Acquirer(s) seeks an extension of the term of any transition services agreement, it shall so notify the United States in writing at least two (2) months prior to the date the transition services agreement expires. The United States shall respond to any such request for extension in writing at least one (1) month prior to the date the transition services agreement expires.

2.   If in conjunction with a transition services agreement pursuant to Subparagraph (1) above, Defendants temporarily assign any employee to the Acquirer(s) to fill a position at a mill to be divested, such employee (a) shall not be assigned to Acquirer(s) longer than six (6) months from the date of divestiture of the Divestiture Assets; (b) shall be located at the mill; (c) shall not, during the temporary assignment, reveal to the Acquirer(s), or make use of, any non-public information concerning Defendants; (d) shall not, during or subsequent to the temporary assignment, reveal to Defendants or anyone else any non-public information concerning Acquirer(s); (e) shall not, subsequent to the temporary

7

assignment, make use of any non-public information concerning Acquirer(s); and (f) shall not retain or convey to others any documents, data, or tangible things concerning the Acquirer(s) obtained during the temporary assignment. Any temporary employee assignment pursuant to this subparagraph IV(G)(2) cannot be extended beyond six (6) months, even if the United States, in its sole discretion, approves an extension of the related transition services agreement.

3.     Defendants shall distribute a copy of this Final Judgment and related Competitive Impact Statement to any employees who perform services for the Acquirer(s) pursuant to Paragraph IV(G)(2).

H.     Unless the United States otherwise consents in writing, the divestiture by Defendants pursuant to Section IV, or by the trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as part of a viable ongoing business producing and selling wheat flour. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

1.     shall be made to an Acquirer(s) that, in the United States's sole judgment, has the intent and capability (including the necessary managerial,

8

operational, technical and financial capability) of competing effectively as a producer and seller of wheat flour; and

2.      shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer(s) and Defendants gives Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer or Acquirers to compete effectively.

## V. <u>APPOINTMENT OF TRUSTEE</u>

A.      If Defendants have not divested all of the Divestiture Assets within the time period specified in Paragraph IV(A), Defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of any of the Divestiture Assets not yet divested.

B.      After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall

be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.      Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the United States and the trustee no later than ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The trustee shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the trustee and Defendants are unable to reach agreement on the trustee's compensation or other terms and conditions of sale within fourteen (14) calendar days of appointment of the trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.

E.      Defendants shall use their best efforts to assist the trustee in accomplishing the required divestitures. The trustee and any consultants, accountants, attorneys, and other agents

10

retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the assets to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information, except such information or documents subject to the attorney client privilege or work-product doctrine.  Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

      F.      After its appointment, the trustee shall file monthly reports with the United States and, as appropriate, the Court, setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after the trustee's appointment, the trustee shall promptly file with the Court a report setting forth:  (1) the trustee's efforts to accomplish the required divestitures; (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished; and (3) the trustee's recommendations.  To the extent such report contains information that the trustee deems confidential, such report shall not be filed in the public docket of the Court.  The trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

H.      If the United States determines that the trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute trustee.

## VI. <u>NOTICE OF PROPOSED DIVESTITURE</u>

A.      If the trustee is responsible for effecting the divestitures required herein, within two (2) business days following execution of a definitive divestiture agreement, the trustee shall notify the United States and Defendants of any proposed divestiture required by Section V of this Final Judgment.  The notice provided to the United States shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

12

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer(s), and any other potential Acquirer.  Defendants and the trustee shall furnish any additional information requested, except such information or documents subject to the attorney client privilege or work-product doctrine within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer or Acquirers, any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer(s) or upon objection by the United States, a divestiture proposed under Sections IV or V shall not be consummated.  Upon objection by Defendants under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. **RIGHT TO HIRE**

A.      To enable the Acquirer(s) to make offers of employment, Defendants shall provide the Acquirer(s) and the United States information relating to the personnel who are employed at, purchase wheat for, purchase or advise on the purchase of wheat futures for,

13

provide instructions, guidance, or assistance relating to food safety or quality assurance for, or

who sell or arrange transportation for flour, millfeed or any other product produced at any of the

mills listed in 1 (a)-(c) and 2 in Schedule A.  The information provided by Defendants shall

include for each employee his or her name, job title, responsibilities as of January 1, 2014,

training and educational history, relevant certifications, and, to the extent permissible by law, job

performance evaluations, and current salary and benefits information.

        B.        Defendants shall make personnel available for interviews with the Acquirer(s)

during normal business hours at a mutually agreeable location and will not interfere with any

negotiations by the Acquirer or Acquirers to employ any of the personnel employed at the

facilities listed in 1 (a)-(c) and 2 in Schedule A.  Interference with respect to this paragraph

includes, but is not limited to, enforcement of noncompete and nondisclosure agreements and

offers to increase an employee's salary or benefits other than as a part of a company-wide

increase in salary or benefits.

                1.        For each employee who elects employment by the Acquirer(s), Defendants

shall vest all unvested pension and other equity rights of that employee

and provide all benefits to which the employee would have been entitled if

terminated without cause, per the terms of the applicable plan(s).

Defendants also shall waive all noncompete and nondisclosure

agreements.

                2.        Nothing in this Section shall prohibit Defendants from maintaining any

reasonable restriction on the disclosure by an employee who accepts an

14

offer of employment with the Acquirer(s) of the Defendants' proprietary,

non-public information that is (1) not otherwise required to be disclosed

by this Final Judgment, (2) related solely to Defendants' businesses and

clients, and (3) unrelated to the Divestiture Assets.

## VIII.   NONDISCLOSURE OF WHEAT CUSTOMER CONFIDENTIAL INFORMATION

A.      Cargill, CHS, and ConAgra shall not disclose to Ardent Mills any Wheat

Customer Confidential Information.

B.      Ardent Mills shall not solicit or receive from Cargill, CHS, or ConAgra any

Wheat Customer Confidential Information, or use any Wheat Customer Confidential Information

received from Cargill, CHS, or ConAgra.

C.      No later than seven (7) calendar days after the entry of this Final Judgment,

Defendants shall distribute a copy of this Final Judgment and the Competitive Impact Statement

to each of their employees with responsibility for wheat sales or flour sales.

D.      Defendants shall distribute a copy of this Final Judgment and related Competitive

Impact Statement to any person who succeeds to a position described in Paragraph VIII(C)

within thirty (30) days of that succession.

E.      Defendants shall annually furnish to each person designated in Paragraphs

VIII(C) and VIII(D) a description and summary of the meaning and requirements of Section

VIII of this Final Judgment.

F.      Defendants shall report to the United States any violations of Section VIII (A) or

VIII(B) of this Final Judgment.

15

## IX.   **FINANCING**

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## X. **HOLD SEPARATE**

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## XI. **AFFIDAVITS**

A.     Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section X of this Final Judgment.  Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to this Section within fifteen (15) calendar days after the change is implemented.

B.     Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## XII. **COMPLIANCE INSPECTION**

A.     For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as the Hold Separate Stipulation and Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized

privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

      1.     access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

      2.     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

      B.     Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If, at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XIII.  NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment, other than incidental purchases of finished goods, raw materials, spare parts, or other equipment offered by the Acquirer in the ordinary course of business.

## XIV.  RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV.  EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XVI.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making available to the public copies of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date:  10/2/14

Court approval subject to procedures of
Antitrust Procedures and Penalties Act, 15
U.S.C. § 16

United States District Judge

## SCHEDULE A

1. ConAgra's ownership and leasehold interest in each of the following properties:

   a. New Prague

      i.   The property at 100 2nd Avenue SW, New Prague, Minnesota  56071-2314;

      ii.  2.46 acres of real property at 302 Second Street Northwest, New Prague, Minnesota pursuant to Lease Agreement, effective as of September 1, 2012, by and between ConAgra Foods, Inc. and City of New Prague, Minnesota;

      iii. Lease of Property, dated June 1, 2001, by and between Union Pacific Railroad Company and ConAgra Foods, Inc.;

      iv.  Track Lease Agreement, dated March 1, 1989, by and between Union Pacific Railroad Company  (as assignee of Chicago and North Western Transportation Company) and ConAgra Flour Milling Company;

   b. Oakland

      i.   The property at 2201 East $^{7th}$ Street, Oakland, California  94606-5301;

      ii.  The property at 401 Kennedy Street, Oakland, California 94606;

      iii. The agreement for Service from Track of Railroad, dated July 26, 1991, by and between Southern  Pacific Transportation Company and ConAgra, Inc.;

   c. Saginaw

      i.   The property at 221 Fairmount Street, Saginaw, Texas  94606;

      ii.  The property at 221 South Fairmount Street, Saginaw, Texas  76179;

      iii. The property at 220 South Fairmount Street, Saginaw, Texas  76179

           (maintenance office that includes the machine shop and spare parts);

20

2. Horizon's ownership and leasehold interest in each of the following properties in Los Angeles, California:

    a. Parcel 1 of Parcel Map NO 23131, in the City of Commerce, in the County of Los Angeles, State of California, as per map filed in Book 276 Pages 33-36 inclusive of Parcel Maps, in the Office of the County Recorder of said county;

        i. Except therefrom all coal, oil, and other minerals, without the right to use any surface thereof, in and under that portion of said land lying within the lands described therein, as reserved by Las Vegas Land and Water Company, in deed recorded August 16, 1944 as instrument no. 15;

        ii. Also excepting therefrom all minerals and minerals rights of every kind and nature, including oil and gas rights, without the right to enter upon the surface thereof, in and under that portion of said land lying within the lands described therein, as reserved by Union Pacific Railway Company, in deed recorded September 30, 1947 as instrument no. 278;

    b. A perpetual easement for ingress and egress as established and more particularly described in that certain document entitled "Reciprocal Easement Agreement for Driveway" recorded May 23, 1980 as instrument no. 80-511791, of official records;

    c. The Industry Track Contract between Union Pacific Railroad Company and Cargill, Incorporated, dated May 10, 2005;

    d. The Sublease Agreement between Horizon Milling, LLC and Lowey Enterprises d/b/a Sunrise Produce, dated August 16, 2004;

    e.  The License Agreement between Horizon Milling LLC and 5469 Ferguson Drive, LLC ("Licensor") allowing Horizon Mill's employees to park on a portion of Licensor's property.

3.  For each property listed in 1 (a)-(c) and 2 above and for the mill on that property,

    a.  all tangible assets (leased or owned) used at or for the operation or maintenance of the mill, including, but not limited to, all real property and improvements; machinery; equipment; hardware; fixtures (including production fixtures); computer hardware, other tangible information technology assets; furniture; laboratories or other assets used to test or evaluate wheat or flour; equipment or buildings used for the storage, offloading, or onloading of wheat, flour, or millfeed; supplies; materials; vehicles; and spare parts in respect of any of the foregoing;

    b.  all improvements, fixed assets, and fixtures pertaining the mill or any other facility on the real property described in 1 (a)-(c) or 2 above, and for any real property on which any facility is located that is used in connection with the operation or maintenance of the mill, or for any real property used for wheat that will be processed at the mill or for flour, millfeed, or any other product produced at the mill;

    c.  all inventories, ingredients, raw materials, works-in-progress, finished goods, supplies, stock, parts, packaging materials and other accessories related thereto, including wheat or other ingredients that are in transit to the mill or flour, millfeed, or other products produced at the mill that is in transit to customers;

d.  all real property and other legal rights possessed by Defendants relating to the use, control or operation of the mill, for elevators, storage, offloading or onloading or other facilities used for wheat to be processed by the mill or for flour, millfeed, or any other product produced at the mill, whether located on the same land as the mill or not, including but not limited to, fee simple ownership rights, easements and all other real property rights for land, improvements, and fixtures; leasehold and rental rights for facilities that are leased or rented, including all renewal or option rights; personal property ownership rights for equipment and other personal property; and contract rights with respect thereto;

e.  all real property and other legal rights possessed by Defendants and not described in 3(d) above, relating to the real property described in 1 (a)-(c) or 2 above, or any building thereon, including but not limited to, fee simple ownership rights, easements and all other real property rights for land, improvements, and fixtures; leasehold and rental rights for facilities that are leased or rented, including all renewal or option rights; personal property ownership rights for equipment and other personal property; and contract rights with respect thereto;

f.  all assets not otherwise described in 3 (a)-(e) above that relate to the transportation of wheat to the mill, or flour, millfeed, or any other product from the mill, including, but not limited to, leases or rights to use rail-to-truck transfer facilities, or leases or ownership interests in rail spurs or rail lines;

g.  all business records relating to operation of the mill located on the property, to transportation of wheat, flour, millfeed, or any other product produced at the mill,

to the purchase of wheat, or to the sale of flour, millfeed, or any other product produced at the mill, or to any legal right in the real property described in 1 (a)-(c) or 2 above and any building affixed thereto, including, but not limited to, maintenance records, financial records, accounting and credit records, leases, correspondence, tax records, governmental licenses and permits, bid or quote records, customer lists, customer communications, customer contracts, supplier contracts, service agreements, operations records, research and development records, testing records, non-employee specific health, environment and safety records, equipment, repair and performance records, training records, and all manuals and technical information Defendants provide to their employees, customers, suppliers, agents or licensees; and

4. All intangible assets that are used to operate the mill or any facility located on the real property described in 1(a)-(c) or 2 above, to operate, maintain, or repair any of the equipment in the mill or in any facility located on the real property described in 1 (a)-(c), or 2 above, including, but not limited to, contractual rights (to the extent assignable) relating to energy, packaging, transportation, purchases of wheat or other materials for processing at the mill, sales of flour, millfeed or other products produced at the mill, including but not limited to, open contracts or orders for the purchase of wheat that have been assigned to the mill and open contracts or orders for the sale of flour, millfeed or other products produced at the mill that have been assigned to the mill; rights to use know-how, trade secrets, patents, licenses, sublicenses and other intellectual property in connection with the Divested Assets, and any assigned trademarks; technical information; computer software and related documentation;

24

blueprints; specifications for materials; specifications provided by customers for flour, millfeed or other products produced at the mill; specifications for parts and devices; safety procedures; and quality assurance and control procedures.

To the extent transference of any contract, lease or other rights described above requires the consent of the other party, Defendants shall use their best efforts to obtain that consent.